1

2　Rodney S. Woodbury, Esq.
　　Nevada Bar No. 7216
3　Jordan B. Peel, Esq.
　　Nevada Bar No. 11678
4　**WOODBURY LAW**
　　50 S. Stephanie Street, Suite 201
5　Henderson, Nevada 89012
　　(702) 933-0777
6　(702) 933-0778
　　rwoodbury@wmb-law.net
7　jpeel@wmb-law.net

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*(left margin, vertical text)* **WOODBURY LAW** 50 S. Stephanie Street, Suite 201 Henderson, Nevada 89012 (702) 933-0777 ✦ Fax (702) 933-0778

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WOODBURY LAW, LTD., a Nevada professional corporation, | Case No.: 2:15-cv-02247 |
| Plaintiff, | |
| vs. | |
| BANK OF AMERICA, NATIONAL ASSOCIATION, a national banking association; BANK OF NEW YORK MELLON CORPORATION, a Delaware corporation; BAC HOME LOANS SERVICING, LP, a Texas limited partnership; THE CERTIFICATEHOLDERS CWALT, INC. ALTERNATIVE LOAN TRUST 2005-59 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-59, an entity; ALTERNATIVE LOAN TRUST 2005-59 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-59, an entity; NATIONAL DEFAULT SERVICING CORPORATION, an Arizona corporation; SELECT PORTFOLIO SERVICING, INC., a Utah corporation; ANDREW S. LAI, an individual; DOES 1-100; ROE ENTITIES 1-100. | **FIRST AMENDED COMPLAINT**<br><br>[**Arbitration Exemption Claimed. Declaratory and Injunctive Relief, Title to Real Estate**] |
| Defendants. | |

Plaintiff, WOODBURY LAW, LTD., by and through its undersigned attorneys, complains and alleges as follows:

**WOODBURY LAW**
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ✦ Fax (702) 933-0778

### PARTIES

1.      Plaintiff is and was at all times relevant hereto a professional corporation with its principal place of business in Clark County, Nevada.

2.      Upon information and belief, Defendant BANK OF AMERICA ("BofA") is and was at all times relevant hereto a national banking association incorporated in Delaware and doing business in Clark County, Nevada.

3.      Upon information and belief, Defendant BANK OF NEW YORK MELLON CORPORATION ("BONY") is and was at all times relevant hereto a Delaware corporation doing business in Clark County, Nevada.

4.      Upon information and belief, BONY has regularly acted as a "trustee" in connection with the purchase and sale of various pools of mortgages, including the mortgage Loan at issue described hereinbelow and mortgages originated in Nevada and/or granted by Nevada residents.

5.      Upon information and belief, Defendant BAC HOME LOANS SERVICING, LP ("BAC") is and was at all times relevant hereto a Texas limited partnership doing business in Clark County, Nevada.

6.      Upon information and belief, Defendant THE CERTIFICATEHOLDERS CWALT, INC. ALTERNATIVE LOAN TRUST 2005-59 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-59 ("CWALT") is and was at all times relevant hereto a corporation, trust, series, or other entity of unknown origin doing business in Clark County, Nevada comprised of a group of investors who collectively claim a partial ownership interest in the DOT (as hereinafter defined).

7.      Upon information and belief, Defendant ALTERNATIVE LOAN TRUST 2005-59 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-59 (together with CWALT, collectively the "2005-59 Trust") is and was at all times relevant hereto a corporation, trust, series, or other entity of unknown origin doing business in Clark County, Nevada comprised of a group of investors who collectively claim a partial ownership interest in the DOT, and may be one and the same entity as CWALT.

8.      Upon information and belief, Defendant NATIONAL DEFAULT SERVICING CORPORATION ("NDSC") is and was at all times relevant hereto an Arizona corporation doing business in Clark County, Nevada.

9.      Upon information and belief, Defendant SELECT PORTFOLIO SERVICING, INC. ("Select Portfolio") is and was at all times relevant hereto a Utah corporation doing business in Clark County, Nevada.

10.     Upon information and belief, Defendant ANDREW S. LAI ("Lai") is and was at all times relevant hereto an individual residing in Clark County, Nevada at the Property (as hereinafter defined).

11.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 100, inclusive, and ROE ENTITIES 1 through 100, inclusive, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names.  Plaintiff is informed and believes that each of the Defendants designated herein as DOES 1 through 100, inclusive, and ROE ENTITIES 1 through 100, inclusive, are responsible in some manner for the events and happenings referred to herein.  Plaintiff will ask leave of this Court to amend this Complaint and to join such Defendants in this action when their true names and capacities have been ascertained.

## GENERAL ALLEGATIONS

12.     Plaintiff (formerly known as Woodbury, Morris & Brown, Ltd.) is the owner of residential property located at 1999 Alcova Ridge Drive, Las Vegas, Nevada 89135, more particularly described as APN 164-02-220-007 (the "Property").

13.     Plaintiff obtained the Property via sheriff's sale from the former owner, Defendant Andrew S. Lai, who, upon information and belief, purchased the Property in connection with a first and possibly second mortgage.

14.     A copy of the Sheriff's Certificate  of Sale of Real Property dated January 6, 2010 whereby Plaintiff acquired title to the Property is attached hereto as Exhibit 1 and by this reference incorporated herein.

15.     Plaintiff also previously acquired the following personal property and rights from

WOODBURY LAW
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ♦ Fax (702) 933-0778

1   Lai via sheriff's sale:

2
3          all right, title, and interest in and to all claims for relief, causes of action,
           allegations, assertions, suits, actions, potential recoveries, things in action, choses
4          in action owned by Andrew Lai, individually, including, but not limited to his
           claims pending against Bank of America as set forth in case number A620509,
5          Woodbury Morris & Brown vs. Bank of America, in the Eighth Judicial District
           Court in Clark County, Nevada.

6   (collectively, the "Choses in Action").

7          16.     A copy of the Sheriff's Certificate of Sale of Personal Property dated August 24,

8   2011 whereby Plaintiff acquired title to the Choses in Action is attached hereto as Exhibit 2 and

9   by this reference incorporated herein.

10         17.     Plaintiff is accordingly Lai's successor-in-interest to both the Property and the

11  Choses in Action and is therefore the real party in interest in this case with standing to bring both

12  its own claims and Lai's.

13         18.     To the extent that this Complaint alleges that Defendants' conduct caused damage

14  to Lai, Plaintiff, as successor-in-interest to the Property and the Choses in Action, is entitled to

15  recoup such damages and to enforce any and all rights and remedies available to Lai as if Plaintiff

16  and Lai were the same individual.  Accordingly, the term Plaintiff shall hereinafter refer to

17  WOODBURY LAW, LTD. and, *where the context so requires*, Lai.

18         19.     On or about September 15, 2005, Lai entered into an Adjustable Rate Note (the

19  "Note") and a Deed of Trust (the "DOT," and together with the Note and other applicable Loan

20  documents, collectively, the "Loan Documents") in connection with a loan (the "Loan") made by

21  Countrywide Home Loans, Inc. ("Countrywide") to Lai.

22         20.     The DOT was recorded on September 21, 2005 in Book No. 20050921, as

23  Instrument No. 0002040 in the Official Records of the Recorder of Clark County, Nevada.

24         21.     Countrywide has putatively attempted to transfer and/or assign the DOT and/or the

25  Note to one or more subsequent investors.

26         22.     Upon information and belief, any assignment and/or transfer of the Loan Documents

27  or the Loan was defective due to a lack of authority, improper parties, gaps in the chain-of-title,

28  legal defects in the documents purporting to memorialize the assignment and/or transfer, or

**WOODBURY LAW**
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ◆ Fax (702) 933-0778

otherwise.

23.     Upon information and belief, neither the Note, the DOT, nor any rights thereunder was ever legally and properly negotiated or transferred from Countrywide to BofA, BONY, BAC, CWALT, the 2005-59 Trust, **or any other party**.

24.     Unless otherwise specified or the context indicates otherwise, Defendants and their putative predecessors-in-interest (including, without limitation, Countrywide) are sometimes collectively referred to herein as "Defendants".

25.     BONY now claims that it is a so-called "trustee" for an undisclosed group of investors who collectively claim a partial ownership interest in the DOT.

26.     Upon information and belief, none of the Defendants is in possession of the Note.

27.     None of the Defendants has followed the procedures for obtaining an enforceable interest in negotiable instruments set forth in NRS 104.3201and 104.3203, as more fully detailed in Leyva v. Nat'l Default Servicing Corp., 255 P.3d 1275 (Nev. 2011).

28.     At all times relevant hereto, Defendants regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed.

29.     At the time of the execution of the Loan Documents, Defendants knew, or should have known, that Lai owned various other properties and bore a substantial risk of defaulting on the Loan.

30.     Upon information and belief, Defendants acted as both the lender and loan officer or mortgage broker for Lai during the Loan negotiation/underwriting process.

31.     Upon information and belief, before the settlement date of closing on the Loan, Defendants did not provide Plaintiff with the correct and timely preliminary disclosures required by regulations enacted pursuant to the Truth In Lending Act ("TILA"), including, without limitation, 12 CFR §§ 226.4, 17, 18, and 12 CFR §§ 226.5 and 226.5(b); the Home Ownership and Equity Protection Act ("HOEPA"), including, without limitation, 12 CFR § 226.32; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2604(c) and 2607; and other federal lending laws, including, without limitation, 15 U.S.C. § 1638(b)(1); 12 U.S.C. § 2604; Reg Z §§ 226.17 and 226.18.

WOODBURY LAW
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ♦ Fax (702) 933-0778

32.     Specifically, upon information and belief, Plaintiff was never provided any information relating to real estate commissions or broker fees.

33.     In connection with the Loan closing, Plaintiff paid an amount of points and fees in excess of $400 or 8% of the total amount of the Loan.

34.     Upon information and belief, Plaintiff was charged an undisclosed and/or illegal Yield Spread Premium fee ("YSP") in violation of 12 U.S.C. §§ 2604 (c) and 2607.

35.     Upon information and belief, Plaintiff was required to pay an undisclosed and/or excessive real estate commission.

36.     Upon information and belief, Plaintiff was charged fees for services that were not actually rendered, or for which no charge is customarily paid by borrowers in Plaintiff's position.

37.     Defendants failed either before, during, and/or after the closing of the Loan to provide Plaintiff with true and accurate copies of important documents, including, but not limited to, the HUD-1 Settlement Statement, the Good Faith Estimate, proper TILA disclosures, or other required documents.

38.     Upon information and belief, Defendants failed to make other disclosures, or made them in an untimely fashion, in violation of TILA, HOEPA, and RESPA.

39.     As a result of these nondisclosures and omissions, Plaintiff either paid excessive fees for services or payed for services that were never performed or performed improperly.

40.     These nondisclosures, coupled with improper screening of Plaintiff's financial ability, in addition to violating TILA, HOEPA, and RESPA, violated the Nevada Deceptive Trade Practices Act and the Nevada Unfair Lending Practices Act.

41.     Pursuant to TILA, HOEPA, and RESPA, Defendants had an obligation to Plaintiff to disclose all material facts concerning the Loan that might affect Plaintiff's decision to accept or reject the Loan.

42.     Defendants established a pattern and practice of harming Plaintiff in that, during the life of the Loan, Defendants have not correctly credited payments or calculated interest on the account due to the inaccurate disclosures.

43.     Defendants knew that the account was not accurate and that Plaintiff would make

further payments based on the account.

44.     Plaintiff did make payments based on the account and paid too much as a result.

45.     At no time did Defendants provide Plaintiff with a contract, agreement, or notice setting forth the improper charges.

46.     Defendants were under a legal obligation and responsibility of overseeing the purported Loan consummation to ensure that the Loan was performed correctly, with accurate disclosures, and that Plaintiff received all mandated documentation and material disclosures under TILA, HOEPA, and RESPA, before and after executing the Loan.

47.     Defendants provided Plaintiff with one hundred percent (100%) financing for the Property, leaving no cushion for declining home prices and greatly limiting the ability of Plaintiff to refinance.

48.     Defendants issued the Loan based solely on the value and equity of the Property and without regard to Plaintiff's ability to repay the Loan.

49.     As a result of Defendants providing Plaintiff with a home loan that had an excessive debt-to-income ratio, 100% financing, and a prepayment penalty, the Loan transaction was unfair, inasmuch as Plaintiff's income was insufficient to repay the Loan, and the success of the Loan relied upon fair market value of the Property increasing or the income of Plaintiff increasing during the life of the Loan transaction, not Plaintiff's ability to repay the Loan when it closed.

50.     Defendants knew or should have known that the Loan transaction would fail if the housing market declined, making the Loan unfair under Nevada law and insufficiently explained under TILA, HOEPA, and RESPA.

51.     Defendants now assert that NDSC is the proper Trustee under the DOT.

52.     NDSC is not the Trustee under the DOT.

53.     Upon information and belief, NDSC has not been authorized by any party with an interest in the Note or the DOT to foreclose on the Property.

54.     All rights and remedies under the Loan Documents, including, without limitation, the putative power of sale under the DOT, have expired by virtue of applicable statutes of limitation, statutes of repose, and/or other applicable limitations periods.

**WOODBURY LAW**
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ♦ Fax (702) 933-0778

55.     Notwithstanding the foregoing, on or about October 30, 2014, Defendants recorded, or caused to be recorded, a Notice of Default and Election to Sell under Deed of Trust in Book No. 20141030, as Instrument No. 0003348 in the Official Records of the Recorder of Clark County, Nevada (the "Notice of Default").

56.     On or about February 5, 2015, Defendants recorded, or caused to be recorded, a Notice of Trustee's Sale in Book No. 20150205, as Instrument No. 0000157 in the Official Records of the Recorder of Clark County, Nevada (the "First Notice of Sale").

57.     The First Notice of Sale provided notice of Defendants' intent to conduct a trustee's sale or auction of the Property on March 3, 2015 pursuant to the DOT.

58.     Defendants subsequently postponed and rescheduled the trustee's sale to April 6, 2015 and then again to April 15, 2015.

59.     The First Notice of Sale alleged an unpaid balance due under the Loan Documents of $1,547,125.08.

60.     On March 11, 2015, Plaintiff sent NDSC (the alleged trustee under the DOT) and Select Porfolio (the alleged Loan servicing agent) a letter requesting validation of the $1,547,125.08 debt alleged in the First Notice of Sale.

61.     On March 27, 2015, Plaintiff received separate responses from NDSC and Select Portfolio.

62.     Both responses included payoff statements. NDSC's response also included copies of the Note, DOT and various other Loan-related documents, together with a putative "payment history" prepared by Select Portfolio.

63.     The "payment history" prepared by Select Portfolio and provided by NDSC was glaringly deficient and incomplete. In fact, it wasn't really a payment history at all since it didn't include any of the payments made by Lai prior to December 1, 2008. That's because it only dated back approximately 2 years to November 2012. Notably absent were the initial 7 years of the Loan from September 15, 2005 through November 7, 2012 (including the initial 3 years when Defendants admit Lai made unspecified payments).

64.     Plaintiff cannot verify the accuracy of the alleged debt or the alleged payoff amounts

WOODBURY LAW
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ✦ Fax (702) 933-0778

from the incomplete payment history.

65.    Accordingly, on that same day (March 27, 2015), Plaintiff demanded that NDSC and Select Portfolio immediately cure these deficiencies by providing the missing 7 years of the payment and expense history forthwith.

66.    Notwithstanding its prior response, NDSC now claims it has nothing to do with servicing the Loan and has failed and refused to provide the missing 7 years of payment and expense history or any other documentation to validate, verify, and account for the alleged debt.

67.    Select Portfolio has also failed to provide the missing 7 years of payment and expense history or any other documentation to validate, verify, and account for the alleged debt.

68.    Select Portfolio's incomplete and seriously deficient "payment history" is in any case highly unintelligible to the average person, rife with abbreviations and accounting codes that at a minimum require a deciphering key for a layperson to even begin to interpret in any intelligent manner.  However, Select Portfolio has failed to provide any such interpretive key.

69.    Furthermore, Defendants themselves are unable to agree upon the amounts, if any, due and owing under the Loan Documents.

70.    On or about February 4, 2015, Defendants' First Notice of Sale claimed that the total amount owed was $1,547,125.08.

71.    However, just over a month later NDSC's March 18, 2015 payoff statement instead claimed that the total amount owed was $1,431,473.40 (over $115,000 less than claimed in the First Notice of Sale).

72.    And then just a week after that, Select Portfolio's payoff statement dated March 26, 2015 claimed that the total amount owed was $1,430,913.89 (over $559 less than the amount stated in NDSC's statement given a week earlier and over $116,000 less than the amount stated in the First Notice of Sale).

73.    So in less than 2 months, the payoff price inexplicably went down by over $116,000, meaning that the $1,547,125.08 payoff amount contained in the First Notice of Sale was inflated by at least $116,000 and likely more.

74.    In fact, it is almost $350,000 more than the $1,199,407.24 amount that Defendants

**WOODBURY LAW**
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ♦ Fax (702) 933-0778

or their agents alleged was due and owing on or about June 24, 2010.

75.    Accepting for the sake of argument the representation contained in both NDSC's payoff statement and Select Portfolio's payoff statement that the alleged amount owed under the Loan Documents is increasing at the rate of $80.92/day, and assuming that approximately 1,685 days elapsed between June 24, 2010 and February 4, 2015, the result is a total increase since June 2010 of only about $136,350, far less (indeed, well over $200,000 less) than the almost $350,000 increase asserted in the First Notice of Sale.

76.    Now, after verbally postponing the March 3, 2015, April 6, 2015, and April 15, 2015 trustee's sale dates, Defendants have scheduled a fourth trustee's sale date and, not surprisingly, are alleging a payoff amount that is materially different than ever before.

77.    Specifically, on or about July 24, 2015, Defendants recorded, or caused to be recorded, a new Notice of Trustee's Sale in Book No. 20150724, as Instrument No. 0000495 in the Official Records of the Recorder of Clark County, Nevada (the "Second Notice of Sale").

78.    The Second Notice of Sale provides notice of Defendants' intent to conduct a trustee's sale of the Property on August 19, 2015 and amazingly alleges an unpaid balance of over $1.5 million again ($1,505,310.36 to be exact).

79.    Thus the alleged unpaid balance has fluctuated wildly over the past 5 years and has particularly been a constant moving target over the past 6 months.

## FIRST CAUSE OF ACTION

### (Preliminary and Permanent Injunctive Relief)

80.    Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint and incorporates the same by reference as though fully set forth herein.

81.    Through their attempted foreclosure of the Property, Defendants have unlawfully sought to enforce rights and remedies under the Loan Documents that have expired by virtue of applicable statutes of limitation, statutes of repose, and/or other applicable limitations periods.

82.    Defendants also lack legal authority to foreclose on the Property or to otherwise to enforce the Loan Documents.

WOODBURY LAW
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ♦ Fax (702) 933-0778

**WOODBURY LAW**
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ♦ Fax (702) 933-0778

83.     In connection with the attempted foreclosure, Defendants have also falsely represented the character, amount, and/or legal status of the debt allegedly due and owing under the Loan Documents and recorded, published, and posted the Notices of Sale and other notices and documents containing false, misleading, and/or deceptive representations, threats, and information.

84.     Defendants' wrongful efforts to foreclose have irreparably harmed, and continue to threaten to harm, Plaintiff, including, without limitation, by preventing Plaintiff from making intelligent decisions concerning the Property, by severely hamstringing its ability to market the Property for sale or for lease, by chilling both active and potential negotiations, by hampering Plaintiff's ability to obtain financing for the Property, by irreversibly damaging existing and potential business relationships, and by otherwise frustrating Plaintiff's ability to determine its rights and how to act or respond intelligently to preserve its interests in the Property.

85.     The Property is also unique real estate, and its loss would result in irreparable harm to Plaintiff for which compensatory damages would be inadequate.

86.     Plaintiff has a reasonable probability of success on the merits of its claims.

87.     Plaintiff is entitled to a temporary, preliminary, and permanent injunctive relief preventing Defendants, their representatives and agents, and any other party from proceeding with the foreclosure sale of the Property and from taking any further steps to sell the Property or enforce the Loan Documents.

88.     It has become necessary for Plaintiff to retain the services of counsel to prosecute claims against Defendants, and Plaintiff is therefore entitled to an award of attorneys' fees and costs incurred herein.

## SECOND CAUSE OF ACTION

### (Quiet Title)

89.     Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint and incorporates the same by reference as though fully set forth herein.

90.     Plaintiff is the sole owner of the Property by virtue of a Sheriff's Certificate of Sale of Real Property dated January 6, 2010.

**WOODBURY LAW**
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ✦ Fax (702) 933-0778

91.     Any and all right, title, and/or interest that Defendants or any of them may have had in the Property by virtue of the DOT have expired, become obsolete, or been extinguished by virtue of applicable statutes of limitation, statutes of repose, and/or otherwise.

92.     Notwithstanding the foregoing, Defendants have continued to attempt to enforce the DOT and exercise their alleged power of sale thereunder, including, without limitation, by recording foreclosure notices and attempting to conduct the currently scheduled trustee's sale.

93.     Plaintiff has named as Defendants in this action all persons known or unknown claiming any legal or equitable right, title, estate, lien, or interest in or to the Property.

94.     Plaintiff is entitled to a judicial determination pursuant to NRS 40.010 and/or any other applicable authority quieting all right, title, and interest in and to the Property in Plaintiff, thereby enabling Plaintiff to use, enjoy, and manage the Property free of any further disturbance or adverse claims.

95.     It has become necessary for Plaintiff to retain the services of counsel to prosecute claims against Defendants, and Plaintiff is therefore entitled to an award of attorneys' fees and costs incurred herein.

## THIRD CAUSE OF ACTION

### (Slander of Title)

96.     Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint and incorporates the same by reference as though fully set forth herein.

97.     Plaintiff is the sole owner of the Property by virtue of the Sheriff's Certificate of Sale of Real Property dated January 6, 2010.

98.     On or about February 5, 2015, Defendants recorded, or caused to be recorded, the First Notice of Sale.

99.     On or about July 24, 2015, Defendants recorded, or caused to be recorded, the Second Notice of Sale (together with the First Notice of Sale, collectively, the "Notices of Sale").

100.    Upon information and belief, the Notices of Sale were also published for at least 3 consecutive weeks in Nevada Legal News and/or other local newspapers of general circulation in

**WOODBURY LAW**
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ♦ Fax (702) 933-0778

Clark County, Nevada and posted in one or more public places in said county for at least 20 consecutive days.

101.     The Notices of Sale provided notice of Defendants' intent to conduct a trustee's sale or auction of the Property pursuant to the DOT.

102.     The Notices of Sale were false publications in that Defendants' power of sale, if any, under the DOT had already expired by virtue of applicable statutes of limitation, statutes of repose, and/or other applicable limitations periods.

103.     The Notices of Sale also contained false information, including, without limitation, an alleged amount owed under the Loan Documents that was tens, if not hundreds, of thousands of dollars in excess of what can reasonably be justified by the terms of the Loan Documents, at least $116,000 more than Defendants later admitted was due when requested to validate and verify the alleged debt, and almost $350,000 more than Defendants or their agents alleged was due in 2010.

104.     The Notices of Sale and other notices and documents recorded against the Property also falsely misrepresent the identity and authority of the lender(s), note holder(s), payee(s), beneficiary(ies), trustee(s), servicing agent(s), assignee(s), and/or other such parties allegedly having power and authority to foreclose under the DOT and to otherwise enforce the Loan Documents.

105.     Defendants' false statements and communications were published intentionally, maliciously, and/or with reckless disregard of their truth or falsity, thereby disparaging, slandering, impugning, and clouding Plaintiff's title to the Property.

106.     Plaintiff has incurred and will continue to incur special, pecuniary damages in an amount in excess of $10,000 as a direct, natural, and proximate result of Defendants' false statements and communications, including, without limitation, attorney's fees and costs in an attempt to remove the resulting cloud on Plaintiff's title to the Property.

107.     Further, due to the wanton, malicious, intentional, and/or reckless conduct of Defendants, Plaintiff is entitled to an award of exemplary and punitive damages against Defendants.

**WOODBURY LAW**
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ✦ Fax (702) 933-0778

108.    It has become necessary for Plaintiff to retain the services of counsel to prosecute claims against Defendants, and Plaintiff is therefore entitled to an award of attorneys' fees and costs incurred herein.

### FOURTH CAUSE OF ACTION

### (Violations of Fair Debt Collection Practices Act)

109.    Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint and incorporates the same by reference as though fully set forth herein.

110.    In their attempts to foreclose on the Property under the DOT and to otherwise enforce and collect amounts allegedly due and owing under the Loan Documents, Defendants were debt collectors attempting to collect a debt within the meanings ascribed to those terms in the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

111.    Defendants violated the FDCPA by, *inter alia*, attempting to collect a debt that was time-barred by applicable statutes of limitation, statutes of repose, and/or other applicable limitations periods.

112.    Defendants also violated the FDCPA (including 15 U.S.C. § 1692(e)) by falsely representing the character, amount, and/or legal status of the debt allegedly due and owing under the Loan Documents and by recording, publishing, and posting the Notices of Sale and other notices and documents containing false, misleading, and/or deceptive representations, threats, or information, including, without limitation: (a) an alleged amount owed under the Loan Documents that was tens, if not hundreds, of thousands of dollars in excess of what could reasonably be justified by the terms of the Loan Documents, at least $116,000 more than Defendants later admitted was due when requested to validate and verify the alleged debt, and almost $350,000 more than Defendants or their agents alleged was due in 2010; and (b) false representations concerning the identity and authority of the lender(s), note holder(s), payee(s), beneficiary(ies), trustee(s), servicing agent(s), assignee(s), and/or other such parties allegedly having power and authority to foreclose under the DOT and to otherwise enforce the Loan Documents.

113.    Defendants' false, misleading, and/or deceptive representations, threats, and

**WOODBURY LAW**
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ◆ Fax (702) 933-0778

information have frustrated Plaintiff's ability to make intelligent decisions concerning the alleged debt and its ability to intelligently respond.

114. As a direct and proximate result of Defendants' violations of the FDCPA, Plaintiff is entitled to damages in an amount in excess of $10,000.

115. It has become necessary for Plaintiff to retain the services of counsel to prosecute claims against Defendants, and Plaintiff is therefore entitled to an award of attorneys' fees and costs incurred herein.

**FIFTH CAUSE OF ACTION**

**(Violations of NRS 107)**

116. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint and incorporates the same by reference as though fully set forth herein.

117. In their attempts to foreclose on the Property under the DOT and to otherwise enforce and collect amounts allegedly due and owing under the Loan Documents, Defendants were beneficiaries, trustees, and/or servicers of the DOT within the meanings ascribed to those terms in NRS Chapter 107 ("NRS 107").

118. Defendants violated the NRS 107 by, *inter alia*, attempting to collect a debt that was time-barred by applicable statutes of limitation, statutes of repose, and/or other applicable limitations periods.

119. Defendants also violated the NRS 107 (including NRS 107.080(2)(c) & (d)) by falsely representing the character, amount, and/or legal status of the debt allegedly due and owing under the Loan Documents and by recording, publishing, and posting the Notices of Sale and other notices and documents containing false, misleading, and/or deceptive representations, threats, and information, including, without limitation: (a) an alleged amount owed under the Loan Documents that was tens, if not hundreds, of thousands of dollars in excess of what could reasonably be justified by the terms of the Loan Documents, at least $116,000 more than Defendants later admitted was due when requested to validate and verify the alleged debt, and almost $350,000 more than Defendants or their agents alleged was due in 2010; (b) false representations concerning

the identity and authority of the lender(s), note holder(s), payee(s), beneficiary(ies), trustee(s), servicing agent(s), assignee(s), and/or other such parties allegedly having power and authority to foreclose under the DOT and to otherwise enforce the Loan Documents; and (c) failing to honor prescribed waiting and/or cure periods and otherwise failing to follow mandatory procedural requirements.

120.    Defendants' false, misleading, and/or deceptive representations, threats, and information have frustrated Plaintiff's ability to make intelligent decisions concerning the alleged debt and its ability to intelligently respond.

121.    As a direct and proximate result of Defendants' violations of the NRS 107, Plaintiff is entitled to damages in an amount in excess of $10,000, including, without limitation, treble damages.

122.    It has become necessary for Plaintiff to retain the services of counsel to prosecute claims against Defendants, and Plaintiff is therefore entitled to an award of attorneys' fees and costs incurred herein.

## SIXTH CAUSE OF ACTION

### (An Accounting)

123.    Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint and incorporates the same by reference as though fully set forth herein.

124.    Defendants are debt collectors and/or alleged creditors attempting to foreclose on Plaintiff's Property under the DOT and to otherwise enforce and collect amounts allegedly due and owing under the Loan Documents.

125.    Defendants are in a position of superior knowledge with sole possession and custody of all financial and accounting records, software, accounts, and deposits related to the Loan, including information related to all alleged charges, expenses, credits, debits, payments, and disbursements.

126.    Defendants' financial and accounting records pertaining to the Loan appear to be so complicated that even Defendants themselves are unable to ascertain and agree upon the

amounts, if any, due and owing under the Loan Documents.

127.    Defendants' First Notice of Sale recorded on or about February 6, 2015 claimed that the total amount owed under the Loan Documents was $1,547,125.08.

128.    Curiously, however, just over a month later NDSC's March 18, 2015 payoff statement instead claimed that the amount owed was $1,431,473.40 (which is amazingly over $115,000 less than the amount claimed the prior month in the First Notice of Sale).

129.    And then just a week after that, Select Portfolio's payoff statement dated March 26, 2015 claimed that the total amount owed was $1,430,913.89 (over $559 less than the amount claimed in NDSC's statement given a week earlier and over $116,000 less than the amount claimed in the First Notice of Sale).

130.    So in less than 2 months, the payoff price inexplicably went down by over $116,000 and, upon information and belief, will continue to drop by tens or even hundreds of thousands of dollars more when a true accounting and all relevant facts finally come to light.

131.    The $1,547,125.08 payoff amount contained in the First Notice of Sale was clearly inflated by at least $116,000 and likely more.

132.    In fact, it is almost $350,000 more than the $1,199,407.24 amount that Defendants or their agents alleged was due and owing on or about June 24, 2010.

133.    Accepting for the sake of argument the representation contained in both NDSC's payoff statement and Select Portfolio's payoff statement that the alleged amount owed under the Loan Documents is increasing at the rate of $80.92/day, and assuming that approximately 1,685 days elapsed between June 24, 2010 and February 4, 2015, the result is a total increase since June 2010 of only about $136,350, far less (indeed, well over $200,000 less) than the almost $350,000 increase asserted in the First Notice of Sale.

134.    These vast discrepancies don't even pass a simple smell test, much less careful scrutiny.

135.    And if Defendants' records and calculations pertaining to the Loan are so erroneous and convoluted that even Defendants themselves cannot ascertain and agree upon the amounts, if any, due and owing under the Loan Documents, then how can Plaintiff, who lacks access to these

WOODBURY LAW
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 • Fax (702) 933-0778

supposed records, be expected to ascertain or calculate such amounts?

136.   On March 11, 2015, Plaintiff sent NDSC (the alleged trustee under the DOT) and Select Porfolio (the alleged Loan servicing company) a letter requesting validation and verification of the $1,547,125.08 debt alleged in the First Notice of Sale.

137.   On March 27, 2015, Plaintiff received separate responses from NDSC and Select Portfolio.

138.   Both responses included payoff statements.  NDSC's response also included copies of the Note, DOT and various other Loan-related documents, together with a putative "payment history" prepared by Select Portfolio.

139.   The "payment history" prepared by Select Portfolio and provided by NDSC was glaringly deficient and incomplete.  In fact, it wasn't really a payment history at all since it didn't include any of the payments made by Lai prior to December 1, 2008.  That's because it only dated back approximately 2 years to November 2012.  Notably absent were the initial 7 years of the Loan from September 15, 2005 through November 7, 2012 (including the initial 3 years when Defendants admit Lai made unspecified payments).

140.   Merely carrying an alleged loan balance forward from 2008 and cataloging the last 2 years of alleged expenses (without accounting for any of the alleged expenses incurred during the initial 7 years of the Loan nor for any of the payments made during the initial 3 years of the Loan) does not allow Plaintiff to verify the accuracy of the alleged debt or the alleged payoff numbers.

141.   Accordingly, on that same day (March 27, 2015), Plaintiff demanded that NDSC and Select Portfolio immediately cure these deficiencies by providing the missing 7 years of the payment and expense history forthwith.

142.   Notwithstanding its prior response, NDSC now claims it has nothing to do with servicing the Loan and has failed and refused to provide the missing 7 years of payment and expense history or any other documentation to validate, verify, and account for the alleged debt.

143.   Select Portfolio has also failed to provide the missing 7 years of payment and expense history or any other documentation to validate, verify, and account for the alleged debt.

144.   Select Portfolio's incomplete and seriously deficient "payment history" is in any

WOODBURY LAW
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ✦ Fax (702) 933-0778

**WOODBURY LAW**
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ♦ Fax (702) 933-0778

case highly unintelligible to the average person, rife with abbreviations and accounting codes that at a minimum require a deciphering key for a layperson to even begin to interpret in any intelligent manner.  However, Select Portfolio has failed to provide a key to interpret its abbreviations and accounting codes.

145.    Now, a mere four months later, Defendants' Second Notice of Sale amazingly alleges an unpaid balance of over $1.5 million again, demonstrating once again that the alleged balance is a constant moving target.

146.    The outstanding balance, if any, owed under the Loan Documents can therefore only be ascertained by an accounting.

147.    No other means are available to Plaintiff to determine its rights with respect to the Property, how much money (if any) is actually due and owing under the Loan Documents, how much money (if any) is actually required to cure the alleged default, or otherwise how to act or respond intelligently to preserve its interests (assuming for the sake of argument that Defendants still have the right to enforce the Loan Documents, which they don't).

148.    Plaintiff has demanded that Defendants verify and account for the debts alleged to be due and owing under the Loan Documents to no avail.

149.    As a direct and proximate result of the acts and omissions of Defendants, Plaintiff is entitled to an accounting.

150.    Plaintiff is also entitled to damages in excess of $10,000.

151.    It has become necessary for Plaintiff to retain the services of counsel to prosecute claims against Defendants, and Plaintiff is therefore entitled to an award of attorneys' fees and costs incurred herein.

## SEVENTH CAUSE OF ACTION

### (Declaratory Relief)

152.    Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint and incorporates the same by reference as though fully set forth herein.

153.    The Loan Documents and applicable law set forth the respective rights and

obligations of the parties to the Loan transaction.

154.    As owner of the Property, Plaintiff disputes Defendants' putative efforts to sell the Property via trustee sale.

155.    Under NRS 30 (Nevada's Uniform Declaratory Judgments Act) and/or any other applicable authority, Plaintiff respectfully requests that the Court exercise its inherent power to declare that applicable statutes of limitation, statutes of repose, or other applicable limitations periods preclude foreclosure of the Property and enforcement of the Note, the DOT, and any other Loan Documents.

156.    The Court should further declare that Defendants have no authority to foreclose on the Property.

157.    The Court should declare that Defendants cannot proceed with any trustee sale and that the DOT is not enforceable against the Property.

158.    The Court should declare that the Loan Documents are void, voidable, and/or rescindable.

159.    The Court should declare that Plaintiff was given an unfair and illegal Loan, further declare that the Loan transaction should be rescinded and declared null and void, and also determine and declare the value of Plaintiff's TILA claims that will be used for recoupment.

160.    The Court should declare that Defendants are liable for all damages inflicted on Plaintiff by their acts and omissions, including, without limitation, their attempts to conduct a trustee's sale of the Property without authority or power to do so, their false publications and representations, and their deceptive and illegal Loan.

161.    The Court should otherwise declare the respective rights and obligations of the parties under the Loan Documents and applicable law.

162.    It has become necessary for Plaintiff to retain the services of counsel to prosecute claims against Defendants, and Plaintiff is therefore entitled to an award of attorneys' fees and costs incurred herein.

**WOODBURY LAW**
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ♦ Fax (702) 933-0778

**WOODBURY LAW**
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ◆ Fax (702) 933-0778

## EIGHTH CAUSE OF ACTION

### (Negligence)

163.     Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint and incorporates the same by reference as though fully set forth herein.

164.     As lenders, note holders, payees, beneficiaries, trustees, servicing agents, loan brokers, and/or loan officers, Defendants had a duty to exercise due care in carrying out their responsibilities in connection with the Loan.

165.     Defendants breached that duty by, among other things, attempting to conduct a trustee's sale of the Property without authority or power to do so, falsifying amounts allegedly due and owing under the Loan Documents, publishing false information and making false representations in connection with the attempted sale, ignoring Plaintiff's outstanding debt and other relevant liabilities when originating, approving and making the Loan, failing to consider or evaluate Plaintiff's income and/or ability to repay the Loan, and otherwise failing to comply with applicable law as detailed more fully hereininabove and hereinbelow.

166.     As a result of Defendants' acts and omissions, Plaintiff is entitled to damages in an amount in excess of $10,000.

167.     It has become necessary for Plaintiff to retain the services of counsel to prosecute claims against Defendants, and Plaintiff is therefore entitled to an award of attorneys' fees and costs incurred herein.

## NINTH CAUSE OF ACTION

### (Negligence Per Se)

168.     Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint and incorporates the same by reference as though fully set forth herein.

169.     Pursuant to applicable law (including, but not limited to, NRS 107.080(2)(c) & (d), NRS 104.3201, and 104.3203) and any other applicable statutes and administrative regulations, Defendants, individually and through their respective agents, owed Plaintiff various duties in

connection with the Loan, attempting to collect the debt allegedly due and owing under the Loan Documents, and attempting to foreclose on the Property.

170.    Plaintiff belongs to the class of persons protected by these statutes and regulations, and the injuries Plaintiff suffered falls within the classes of harm intended to be prevented by these statutes.

171.    As specified more fully hereinabove and hereinbelow, Defendants breached these duties in several respects, including without limitation, by attempting to conduct a trustee's sale of the Property without authority or power to do so, falsifying amounts allegedly due and owing under the Loan Documents, publishing false information and making false representations in connection with the attempted sale, failing to provide required disclosures, and otherwise failing to perform their legal obligations in connection with the Loan.

172.    As a result of Defendants' acts and omissions, Plaintiff is entitled to damages in an amount in excess of $10,000.

173.    It has become necessary for Plaintiff to retain the services of counsel to prosecute claims against Defendants, and Plaintiff is therefore entitled to an award of attorneys' fees and costs incurred herein.

### **TENTH CAUSE OF ACTION**

### **(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

174.    Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint and incorporates the same by reference as though fully set forth herein.

175.    Nevada law implies in every contract a covenant of good faith and fair dealing between the parties thereto.

176.    If and to the extent that the Loan Documents constitute valid, binding, and enforceable contracts, Defendants deliberately contravened both the express terms and the intention and spirit of the Loan Documents by failing and refusing to abide by the terms and conditions thereof in a bad faith effort to deny Plaintiff the benefits and the reasonable and justified expectations that he was entitled to thereunder.

WOODBURY LAW
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777 ♦ Fax (702) 933-0778

177.    Without limiting the generality of the foregoing, Defendants have failed to act in good faith by attempting to conduct a trustee's sale of the Property without authority or power to do so, falsifying amounts allegedly due under the Loan Documents, publishing false information and making false representations in connection with the attempted sale, failing to provide required disclosures, improperly assigning Plaintiff's Loan to third parties, failing to advise Plaintiff of such assignments, and failing to advise Plaintiff that the Loan was unfair, illegal, and at risk of default from its inception.

178.    As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff is entitled to damages in an amount in excess of $10,000.

179.    Further, due to the wanton, malicious, and intentional conduct of Defendants, Plaintiff is entitled to an award of exemplary and punitive damages.

180.    It has become necessary for Plaintiff to retain the services of counsel to prosecute claims against Defendants, and Plaintiff is therefore entitled to an award of attorneys' fees and costs incurred herein.

## ELEVENTH CAUSE OF ACTION

### (Unjust Enrichment)

181.    Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint and incorporates the same by reference as though fully set forth herein.

182.    Upon information and belief, Defendants have charged, and Plaintiff has paid, excessive, undisclosed, and/or illegal interest, fees, and penalties in connection with the Loan, including, without limitation, in connection with Defendants' foreclosure attempts.

183.    Defendants are, therefore, in possession of money that belongs to Plaintiff and have deprived Plaintiff of the possession, use, and enjoyment thereof.

184.    As a result of Defendants' acts and omissions, Plaintiff is entitled to damages in an amount in excess of $10,000.

185.    It has become necessary for Plaintiff to retain the services of counsel to prosecute claims against Defendants, and Plaintiff is therefore entitled to an award of attorneys' fees and

WOODBURY LAW
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777♦ Fax (702) 933-0778

costs incurred herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     For temporary, preliminary, and permanent injunctive relief precluding Defendants from foreclosing on the Property and from taking any further steps to sell the Property or to enforce the Loan Documents;

2.     For an order and judgment rescinding the Loan Documents and/or declaring them void or voidable;

3.     For an order and judgment declaring that Defendants have no right to foreclose on the Property and otherwise declaring the respective rights and obligations of the parties under the Loan Documents and applicable law, all as more fully set forth hereinabove;

4.     For compensatory damages in an amount in excess of $10,000;

5.     For consequential damages in an amount in excess of $10,000;

6.     For exemplary, punitive, special, treble, and/or statutory damages in excess of $10,000;

7.     For attorney's fees and costs of suit; and

8.     For such other and further relief as this Court deems just and proper.

DATED this 9th day of December, 2015.

**WOODBURY LAW**

/s/ *Jordan B. Peel*
_____
Rodney S. Woodbury, Esq.
Nevada Bar No. 7216
Jordan B. Peel, Esq.
Nevada Bar No. 11678
50 S. Stephanie Street, Suite 201
Henderson, NV 89012

**WOODBURY LAW**
50 S. Stephanie Street, Suite 201
Henderson, Nevada 89012
(702) 933-0777♦ Fax (702) 933-0778